CASEIN CO. OF AMERICA v. A. M. COLLINS MFG. CO.

(Circuit Court, E. D. Pennsylvania. July 21, 1909.)

No. 14.

1. PATENTS (§ 328*)—PRIOR USE—ENAMELING COMPOUND FOR COATING PAPER.
   The Hall patent, No. 626,537, for an enameling compound for surfacing paper and method of producing the same, is void for prior use of the compound for many years, produced by the same method.

   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*

   Priority and continuance of public use of invention as affecting patentability, see note to Eastman v. Mayor, etc., of City of New York, 69 C. C. A. 646.]

2. PATENTS (§ 328*)—PRIOR USE—ENAMELING COMPOUND FOR COATING PAPER.
   The Hall reissue patent, No. 11,811 (original No. 609,200), for an insoluble waterproof compound for coating paper, etc., is void for prior use of

---

the same or similar compound for more than two years prior to the application.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Wetmore & Jenner, for complainant.

Harris S. Sparhawk and Horace Pettit, for defendant.

HOLLAND, District Judge. This suit was instituted alleging infringement of two letters patent issued to William A. Hall, relating to casein coatings for paper. For the first he filed his application April 5, 1897, and the original patent was issued August 16, 1898, being No. 609,200, hereinafter called the "formaldehyde patent." An application for the reissue of this patent was filed November 17, 1899, and the reissue bears date March 6, 1900, being numbered 11,811. The other patent, No. 626,537, was applied for July 25, 1898, and issued June 6, 1899. This will be referred to hereafter as the "free acid patent." Both these patents were duly assigned to the complainant company, a corporation organized under the laws of New Jersey. It is alleged in the bill that the inventions and improvements described and claimed in these patents are capable of conjoint use in the same compound and in the method of preparing the same, and are in fact so conjointly used by the defendant; and, further, that the latter has infringed both these patents, for which the usual demand for relief is made.

The answer admits the issue and reissue of the formaldehyde patent to Hall, but denies the validity of the reissue on the ground that: (a) It is for a different invention from that for which the original was granted; (b) that Hall was guilty of laches in applying for the same; and (c) that the original was not surrendered for insufficiency arising without fraudulent intent. It is further alleged that both the original and reissue are void for lack of patentable novelty in view of the prior state of the art and by reason of certain enumerated prior patents and publications, and prior knowledge and use by certain enumerated persons, and denies infringement of said reissue letters patent.

As to the "free acid patent," the answer admits the issue of this patent, but denies the novelty and utility of the alleged invention, or that Hall was the first inventor, and alleges that the said invention was without patentable novelty in view of the prior state of the art, and of certain prior patents and publications, and because of prior knowledge and use by certain persons; and further alleges that the said invention is incapable of producing the result described in said patent, and was in public use in the United States for more than two years before the application for the patent.

Patent No. 626,537 for the "free acid patent" will be first considered. The claims of this patent are as follows:

"1. An insoluble coating or enamel for paper composed of casein, a free acid, an alkali, and clay or other suitable mineral base, in substantially the proportions specified.

"2. An insoluble coating or enamel for paper composed of casein containing a free acid, in substantially the proportions specified.

"3. The method of producing an insoluble coating or enameling composition for paper which consists in precipitating casein by the use of an acid, partially washing the casein so as to leave a portion of the acid combined therewith, drying out the acid casein thus produced, dissolving said casein by means of a suitable alkali, and introducing a mineral body or filler to the alkaline-casein solution thus formed."

This patent is for a new and useful improvement in enameling compounds and method of producing the same. The invention has for its object the production "of a coating or enameling for finishing and surfacing paper," etc. The composition, as stated in the specification "belongs to that class of clay coatings in which a mineral base—such as clay, blanc fixe, or a similar ingredient—is used to give body to the composition."

Of the numerous matters of defense set up in the answer, it will be necessary to consider only one, to wit, public use of the mixture and sale of the product for more than two years in the United States before the application for the patent. An examination of the evidence, both documentary and oral, clearly establishes that an insoluble coating or enamel, such as described in the "free acid patent," was produced and used for the purpose of coating walls, signs, paper, and other articles for many years prior to the date of the patent.

It will be noticed that this patent was issued to cover a composition of matter and the method of producing it. The claims are three in number, two of which claim the composition, and the third the method of producing it. The description informs us of the ingredients essential to the product, which are, as stated: 80 per cent. of a mineral base, 17 per cent. of casein, containing about 1 per cent. of the free acid used to precipitate the curd. In mixing the casein and mineral base, a small amount of alkali, about 3 per cent. of the composition, is used, and any suitable alkali, such as borax, ammonia, or carbonate of soda, will be suitable for the purpose. We find from the specifications a further description as to the method of producing the casein, which is accomplished by precipitating the curd from milk by the use of any suitable acid which will throw down the curd, and the patentee states that he leaves a small portion of the acid in the curd or casein for the reason that the effect of the acid is to render the curd insoluble after the composition has been applied and has become seasoned, and furthermore it leaves the curd in a wholesome and clean condition, without imparting to it the "cheesy" odor resulting from rennet curdling or natural souring.

Three ingredients are used in the composition—casein, mineral base, and any suitable alkali. This patented enamel requires casein produced as above described. An examination of the evidence shows that this composition had been produced and used for a long time prior to the issuing of the patent. Milk had been subjected to the use of the same acid for the purpose of throwing down the curd after which the acid was washed out; but frequently it occurred that some of the acid remained in the curd, and in fact it is somewhat difficult, as the evidence shows, to entirely eliminate all the acid by washing, so that prior to the issuing of the patent the very same kind of case-

in was frequently produced, although we do not find it anywhere claimed in the prior use that the remaining acid in the casein was of any advantage to it in the production of an insoluble enamel coating; but it was produced prior to the patent, the same as it is being manufactured at the present time. This casein was used in connection with a mineral base of about the same proportion as that stated in the specifications, and an alkali was also used in connection with casein and the mineral base long prior to the issuing of the patent for the same purpose as stated in the patent; that is, to cut and dissolve the curd in mixing it with the mineral base. This coating was sold upon the market without any statement as to the particular functions of the various ingredients entering into it, but that it was made in the same way the evidence clearly establishes.

The formaldehyde patent is for a new and useful improvement in insoluble waterproof compounds which are to be used for coating paper, and it is peculiarly adapted for surfacing walls of rooms or of advertising signs intended for outdoor service, or of paper, cloth, leather, or analogous substances, which it is desirable should receive an insoluble coating and one which is pervious to but unaffected by water, and yet remains in such condition as to readily take the inks in printing or decorative work. The proportions of the mixture are 80 per cent. of a mineral base, 16 per cent. of casein, and one part alkali, and 3½ per cent. of formaldehyde. It is claimed the mineral base acts as a retarding agent, preventing the composition from setting too rapidly after it has been mixed, and that the formaldehyde is to render it, when fully dried out, insoluble in or insensible to the action of weather, either at normal or at high temperature. We find from the evidence that there is nothing at all new in this combination, as all these substances had been used in about the same proportions long prior to the issuing of the patent. The Zimmerman British patent, applied for in 1894, discloses the use of the casein solution with formaldehyde forming an insoluble film; but it is endeavored to draw the distinction between a film coating, in that it is essential that a paper coating should contain a mineral base. It is established that a mineral base in varying proportions had been used for years prior in producing coatings for different use, and Zimmerman could have used in his mixture what was then being used by other firms manufacturing insoluble coatings in such proportions as were then in use and produced the best results; but, aside from whether or not Zimmerman could have added a mineral base to his composition after the patent was issued in the same proportion as used in the latter, the evidence shows that the same mixture with formaldehyde had been used as early as 1889. These prior mixtures consisted of casein precipitated by acid, dissolved in an alkali mixed with clay or other suitable mineral base as a coating, and as early as in the year 1894 formaldehyde was used in the production of an insoluble coating, not experimentally, but in a commercial stage.

We conclude that the ingredients used in the composition both of the free acid patent and the formaldehyde patent had been used by the public for more than two years before the application for the

patents in question, intermixed in the same manner, and producing the same result, and that both patents are invalid.

For the reasons stated, the bill should be dismissed, with costs to defendant, and it is so ordered.